1
2
3
4
5
6
7
8
9
10

## UNITED STATES DISTRICT COURT

### EASTERN DISTRICT OF CALIFORNIA

11 | STEVEN ROSS MADSEN,              )   CV F 03 5014 LJO HC
                                    )
12 |          Petitioner,           )   ORDER DENYING PETITION FOR WRIT
                                    )   OF HABEAS CORPUS
13 |     v.                         )   [Doc. #1]
                                    )
14 |                                )   ORDER DIRECTING CLERK OF COURT
     M. C. KRAMER, Warden,          )   TO ENTER JUDGMENT
15 |                                )
              Respondent.           )
16 | _____)

17
18
19
20
21
22
23
24

        Petitioner is a state prisoner proceeding pro se with a petition for writ of habeas corpus

pursuant to 28 U.S.C. § 2254.  The parties having voluntarily consented to exercise of Magistrate

Judge jurisdiction pursuant to 28 U.S.C. § 636(c)(1), by order dated May 23, 2003, this case was

assigned to the Magistrate Judge for all purposes, including entry of final judgment.  Due to the

death of Magistrate Judge Hollis G. Best and the appointment of Magistrate Judge William M.

Wunderlich, on May 2, 2004, the matter was reassigned to the undersigned for all further

proceedings.

### PROCEDURAL HISTORY[1]

25
26

        Petitioner is currently in the custody of the California Department of Corrections pursuant to

27
28

---

[1]This information is derived from the petition for writ of habeas corpus, the exhibits attached to the petition, Respondent's answer to the petition, the exhibits lodged with the answer, and Petitioner's traverse.

1   a judgment of the Superior Court of California, County of Fresno, entered on April 23, 1998,

2   following his conviction by jury trial of the following counts: (1) Forcible oral copulation in

3   violation of Cal. Penal Code § 288a(c)[2]; (2) Robbery in violation of §§ 211, 212.5(c); (3) Assault

4   with a deadly weapon, to wit, a knife, with force likely to commit great bodily injury in violation of

5   § 245(a)(1); (4) Sexual battery in violation of § 243.4(a); (5) Robbery in violation of §§ 211,

6   212.5(c); (6) Making a terrorist threat in violation of § 422; (7) Forcible oral copulation in violation

7   of § 288a(c); (8) Robbery in violation of §§ 211, 212.5(c). See Exhibit C, Answer to Petition for

8   Writ of Habeas Corpus (hereinafter "Answer"). The allegations that Petitioner had personally used a

9   knife within the meaning of §§ 12022.3(a) and 667.61(e)(4), and that there was more than one victim

10  within the meaning of § 667.61(e)(5) were found to be true. Id. As to the three counts of robbery and

11  the count of making a terrorist threat, the jury found true the allegations that Petitioner had

12  personally used a deadly and dangerous weapon within the meaning of § 12022(b). Id. On May 21,

13  1998, Petitioner was sentenced to a determinate term of eight (8) years in state prison plus an

14  indeterminate term of 25 years to life. Id.

15      Thereafter, Petitioner filed a notice of appeal with the California Court of Appeal, Fifth

16  Appellate District (hereinafter "5th DCA"). On June 8, 2000, the 5th DCA issued an unpublished

17  opinion reversing Petitioner's conviction for making a terrorist threat as well as the special allegation

18  that Petitioner had personally used a knife with respect to the first count of forcible oral copulation.

19  Id. The judgments of conviction on all other counts were affirmed; however, the sentences on all

20  such other counts were vacated, and the case was remanded to the trial court with instructions to

21  resentence Petitioner consistent with the opinion. Id.

22      On July 10, 2000, Petitioner filed a petition for review with the California Supreme Court.

23  See Exhibit I, Answer. On September 20, 2000, the petition was summarily denied without comment

24  or citation to authority. See Exhibit J, Answer.

25      On November 20, 2000, Petitioner filed a petition for writ of certiorari with the United States

26  Supreme Court. See Exhibit M, Answer. On February 26, 2001, the petition was denied. See Exhibit

27

28
    _____

        [2]All further references are to the California Penal Code unless otherwise noted.

1    N, Answer.

2           On January 7, 2002, Petitioner filed a petition for writ of habeas corpus in the Fresno County

3    Superior Court. See Exhibit D, Answer.  On January 14, 2002, the petition was denied. See Exhibit

4    E, Answer.

5           On February 4, 2002, Petitioner filed a petition for writ of habeas corpus in the 5th DCA. See

6    Exhibits F, Answer. On April 22, 2002, Petitioner filed a supplemental habeas petition in the 5th

7    DCA. See Exhibit G, Answer.  On May 10, 2002, both petitions were denied. See Exhibit H,

8    Answer.

9           On May 20, 2002, Petitioner filed a habeas petition in the California Supreme Court alleging

10   the same claims he raises in the instant petition. See Exhibit K, Answer. On November 26, 2002, the

11   petition was summarily denied. See Exhibit L, Answer.

12          On September 3, 2002, Petitioner filed his first federal habeas petition in the United States

13   District Court for the Eastern District of California, Fresno Division. See Madsen v. Kramer, Case

14   No. CV F 02 6060 DLB HC. On November 18, 2002, Respondent filed a motion to stay the petition

15   pending exhaustion of Petitioner's state remedies. On December 6, 2002, the Court denied

16   Respondent's motion to stay and dismissed the petition because none of the grounds raised in the

17   petition were exhausted.

18          On January 6, 2003, Petitioner filed the instant petition for writ of habeas corpus. Petitioner

19   raises three purported grounds for relief: (1) Ineffective assistance of trial counsel; (2) Prosecutorial

20   misconduct; and (3) Ineffective assistance of appellate counsel.

21          On June 24, 2003, Respondent filed an answer to the petition.

22          On July 16, 2003, Petitioner filed a traverse to Respondent's answer.

23                              **FACTUAL BACKGROUND**

24          The Court hereby adopts the facts as summarized by the 5th DCA in its opinion dated July 6,

25   2000:

26                              *Pam F.*

27          On January 14, 1996, between 8:00 and 10:00 a.m., Pam F. was walking with her son
            and a friend from McDonalds towards her home on Motel Drive in Fresno. Pam was eight
28          and one-half months pregnant. Appellant drove by in a silver blue Toyota pickup truck. He

stopped and asked Pam if she wanted a ride. Because she was not feeling well, Pam accepted the ride after making arrangements for her friend to walk her son home. Pam soon realized she had made a mistake because appellant drove in a direction opposite from her home and took her to an empty field. He stopped the truck and began touching her breasts. He was rough and said he wanted her milk. Pam was frightened and told him she was pregnant. She did not know whether she would come out of the encounter alive. He was very rough and proceeded to suck her breasts. He then forced her to orally copulate him.

After Pam F. completed the act, appellant unsuccessfully tried to start his truck. Pam got out and helped him push start the truck because she hoped appellant would take her back to town. Once the truck was started, however, appellant reached behind her and locked the passenger side door. He asked Pam for her money. Pam resisted saying she had a child and was going to have another.

When Pam refused to give him the money, appellant pulled out a knife from behind the seat. He threatened to kill the unborn baby, pointing to the bull's eye on the front of Pam's T-shirt. He poked her in the breast with the knife and ordered her out of the truck. The pressure of the knife resulted in a small pinhole puncture wound. Pam was very frightened at this point and gave appellant $50 or $60. Pam asked if appellant was going to leave her there and appellant again ordered her out of the truck. Pam exited the truck and walked home. Pam went to the hospital that night and gave birth the next day. She did not report the attack because she was humiliated. She was not working as a prostitute and had not seen appellant before. Pam identified appellant as the man who attacked her both at trial and in a pretrial photo lineup. She also identified a picture of appellant's truck as the truck he was driving the morning of the attack.

*Twila S.*

On a night in August of 1996, Twila S. was working as a prostitute on Motel Drive between 11:00 p.m. and 1:00 a.m. She approached a little silver pickup truck with a primered front panel and a camper shell[3] driven by appellant. She asked if he wanted a "date" ("date" is the common euphemism for the act of prostitution). Appellant said he did. Twila said she usually "dated" in a nearby cul-de-sac, but appellant said this was too close to the city and proceeded to drive Twila to the pet cemetery on the outskirts of town. The area was once known as one frequented by prostitutes and their customers and, although this is no longer true, the area remains isolated, especially at night.

The two had agreed that Twila would give appellant a "blow job" for $20. When they arrived at the pet cemetery, appellant gave her the $20, which she put in her shoe. Twila then orally copulated appellant. Appellant asked if he could "tit fuck" Twila. She agreed. To perform this act, appellant exited the truck and came to the passenger side. Appellant ejaculated on her breasts. Both acts were consensual. Twila wiped herself off with a towel she found on the seat of the truck.

When the acts were completed, appellant returned to the truck and reached over and locked the door on Twila's side. He pulled out a knife from under the seat, held it in his hand and demanded that Twila give him back his money. Twila gave him the money, got out of the truck and walked home.

Twila initially reported the attack while at the hospital two weeks later seeking

---

[3]Twila testified she originally thought the truck was beige, but later realized when she saw the truck again that it was silver in color. She thought the truck was a Mitsubishi. A defense witness, Larry Johnson, testified appellant owned a beige camper shell.

treatment for a beating received by her then boyfriend, now her husband. Police were called and she told the officer appellant had attacked her and hit her in the jaw. She later admitted lying and said she was using the attack by appellant to protect her boyfriend. When she was served with a subpoena to appear at trial, she told the serving officer, CHP Officer Skidmore, that she had lied to police at the hospital about the extent of the attack. At trial, she testified appellant had not beaten her as she had claimed at the hospital, but that he had robbed and threatened her after the two had engaged in consensual sex. Twila identified appellant as her attacker at trial and in a pretrial lineup, and she also identified a picture of appellant's truck as the one she was attacked in.

*Darlene B.*

Sometime in January 1997, Darlene B. was working as a prostitute when appellant pulled up in a silver-blue pickup truck and asked her if she needed a ride. Appellant then asked Darlene if she would give him a "blow job" for $20. After assuring herself that appellant was not working with the police, Darlene agreed and got into appellant's truck and the two drove to her apartment complex. Darlene told appellant he would have to deposit the money "in [her] account," meaning he would have to pay first. Appellant gave her the $20.

Appellant was nervous at the apartment complex and wanted to leave. As they talked, Darlene told him about a man she had been warned about who drove a blue colored truck with a primered hood, had a pock-marked face and was attacking prostitutes in the area. As she told appellant about the warning, she realized appellant was the man who was the subject of the warning. At that point, appellant, smiling, leaned over and locked the door of the truck. He said he would not hurt Darlene. He drove to a residential dead end street. It was night and the area was dark.

After they parked, appellant ordered Darlene to orally copulate him. When she hesitated, appellant reached down underneath his seat and pulled out a knife. He told her to do what she had been paid to do. He also ordered her to take off her clothes. Darlene asked if she could use a condom and appellant agreed. At that point, Darlene was scared and crying. Appellant told her to stop crying, he was not going to hurt her. He held the knife to Darlene's throat.

Darlene was unable to orally copulate appellant. Appellant then placed his penis between Darlene's breasts until he ejaculated. Appellant gave Darlene a towel to wipe herself off and took $70 from her purse. He then ordered her out of the car before she could dress. He refused her request to take her to a main street. Darlene testified the knife was brown handled and folded.

*Investigation*

On January 22, 1997, Officer Skidmore and another officer stopped a silver blue Toyota pickup because of an inoperative taillight. Appellant was driving the truck. Although the officers knew the truck fit the general description of the one used in the assaults on women in the area, they did not have sufficient evidence to hold appellant for these crimes and he was released.

Thereafter, Skidmore became involved in the investigation of the assaults. He obtained a photograph of appellant from the Department of Motor Vehicles. He then presented several of the victims with a photo lineup which included appellant's picture. In each case, they identified appellant as the person who had assaulted them.

While working with the Sexual Predator Team from the Department of Justice, Skidmore was able to determine the location of appellant's residence (and his truck) at an

1      address on Dakota Avenue in Fresno. The residence was placed under surveillance.

2                     *Search (from transcript of section 1538.5 hearing)*

3            On March 13, 1997, Officer Skidmore, Fresno Police Officer Nella and two agents
       from the Department of Justice arrived at the Dakota address to impound appellant's truck.
4      They did not have a warrant. The officers contacted the person living in the house on the
       property, a Bridget Watkins or Bridget Mosely[4] and told her the officers were going to
5      impound the vehicle. The officers were able to see appellant's car in the back area of the
       property, behind a locked gate. Watkins was unwilling to open the gate, but did so when told
6      by officers a tow truck was en route and that appellant's truck would be impounded.

7            While on the property, the officers searched the truck, opening the unlocked door and
       the glove compartment. Pictures were taken. The officers found a kitchen-type knife on the
8      left side of the truck, close to the driver's side door and tucked under a speaker box located
       underneath the driver's seat. The officers also checked the trailer in which appellant lived to
9      see if he was home; he was not.

10           The property owner, Rory Ekern, was present during most of the search. He testified
       appellant lived in the trailer under a recreational vehicle garage. He said the police had been
11     "hanging out" near his property for about one week. He stated one of the officers showed him
       a kitchen steak knife which the officer said was found beneath the seat of the truck. Then
12     Ekern said he heard one officer telling other officers that they had to put the knife back in the
       car to have the pictures taken.
13
             The truck was impounded and moved from the property. On March 14, 1997, a
14     warrant was obtained and a further search of the truck was done by the Fresno Police
       Department Bureau of Investigation.
15
                                             *Defense*
16
             Appellant took the stand in his own behalf. He admitted engaging in acts of
17     prostitution with Darlene B. and Pam F. His testimony concerning the circumstances of his
       initial encounters with the women was essentially the same as that of the victims, except that
18     he said Pam was working as a prostitute and approached him for work. Appellant said he
       entered into an agreement with the women to perform a "blow job" for $20. He also said it is
19     his practice not to give prostitutes money until they perform the act agreed upon.

20           Appellant said he refused to pay the women because they did not perform as agreed.
       With Darlene, he said she could not orally copulate him and she said she was going to vomit.
21     He lost interest and told her to leave the truck. With Pam, he testified that, after agreeing to
       do a "blow job," she just wanted to do "a hand job," which appellant said he could do
22     himself. He ordered her to get out and refused to pay. He also claimed he did not know Pam
       was pregnant, and thought she was just "fat."
23
             Appellant denied any contact with Twila S. He also said he never threatened Darlene
24     B. or Pam F. and did not use a knife. He denied robbing either woman and denied ejaculating
       on either woman's breasts. He admitted the presence of the steak knife in his truck at the time
25     of the search, but said he never had it in the truck while "driving around."

26     See pp. 4-9, Exhibit C, Answer.

27     _____

28           [4]Skidmore referred to this individual as "Watkins" and Ekern referred to her as "Mosely." No explanation appears
       in the record for the different last names.

**DISCUSSION**

**I.  Jurisdiction**

Relief by way of a petition for writ of habeas corpus extends to a person in custody pursuant to the judgment of a state court if the custody is in violation of the Constitution or laws or treaties of the United States.  28 U.S.C. § 2254(a); 28 U.S.C. § 2241(c)(3); Williams v. Taylor, 529 U.S. 362, 375 fn.7 (2000).  Petitioner asserts that he suffered violations of his rights as guaranteed by the U.S. Constitution.  In addition, the conviction challenged arises out of the Fresno County Superior Court, which is located within the jurisdiction of this court.  28 U.S.C. § 2254(a); 2241(d).  Accordingly, the Court has jurisdiction over the action.

On April 24, 1996, Congress enacted the Antiterrorism and Effective Death Penalty Act of 1996 ("AEDPA"), which applies to all petitions for writ of habeas corpus filed after its enactment. Lindh v. Murphy, 521 U.S. 320 (1997), *cert. denied,* 522 U.S. 1008 (1997); Jeffries v. Wood, 114 F.3d 1484, 1499 (9th Cir. 1997), *quoting* Drinkard v. Johnson, 97 F.3d 751, 769 (5th Cir.1996), *cert. denied,* 520 U.S. 1107 (1997), *overruled on other grounds by* Lindh v. Murphy, 521 U.S. 320 (1997) (holding AEDPA only applicable to cases filed after statute's enactment).  The instant petition was filed after the enactment of the AEDPA; thus, it is governed by its provisions.

**II.  Legal Standard of Review**

This Court may entertain a petition for writ of habeas corpus "in behalf of a person in custody pursuant to the judgment of a State court only on the ground that he is in custody in violation of the Constitution or laws or treaties of the United States."  28 U.S.C. § 2254(a).

The instant petition is reviewed under the provisions of the Antiterrorism and Effective Death Penalty Act which became effective on April 24, 1996.  Lockyer v. Andrade,  538 U.S. 63, 70 (2003).  Under the AEDPA, an application for habeas corpus will not be granted unless the adjudication of the claim "resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States" or "resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State Court proceeding." 28 U.S.C. § 2254(d); see Lockyer, 538 U.S. at 70-71; see Williams, 529 U.S. at 413.

1    As a threshold matter, this Court must "first decide what constitutes 'clearly established

2    Federal law, as determined by the Supreme Court of the United States.'" Lockyer, 538 U.S. at 71,

3    quoting 28 U.S.C. § 2254(d)(1).  In ascertaining what is "clearly established Federal law," this Court

4    must look to the "holdings, as opposed to the dicta, of [the Supreme Court's] decisions as of the time

5    of the relevant state-court decision." Id., quoting Williams, 592 U.S. at 412. "In other words, 'clearly

6    established Federal law' under § 2254(d)(1) is the governing legal principle or principles set forth by

7    the Supreme Court at the time the state court renders its decision." Id.

8    Finally, this Court must consider whether the state court's decision was "contrary to, or

9    involved an unreasonable application of, clearly established Federal law." Lockyer, 538 U.S. at 72,

10    quoting 28 U.S.C. § 2254(d)(1). "Under the 'contrary to' clause, a federal habeas court may grant the

11    writ if the state court arrives at a conclusion opposite to that reached by [the Supreme] Court on a

12    question of law or if the state court decides a case differently than [the] Court has on a set of

13    materially indistinguishable facts." Williams, 529 U.S. at 413; see also Lockyer, 538 U.S. at 72.

14    "Under the 'reasonable application clause,' a federal habeas court may grant the writ if the state

15    court identifies the correct governing legal principle from [the] Court's decisions but unreasonably

16    applies that principle to the facts of the prisoner's case." Williams, 529 U.S. at 413.

17    "[A] federal court may not issue the writ simply because the court concludes in its

18    independent judgment that the relevant state court decision applied clearly established federal law

19    erroneously or incorrectly.  Rather, that application must also be unreasonable." Id. at 411.  A

20    federal habeas court making the "unreasonable application" inquiry should ask whether the state

21    court's application of clearly established federal law was "objectively unreasonable." Id. at 409.

22    Petitioner has the burden of establishing that the decision of the state court is contrary to or

23    involved an unreasonable application of United States Supreme Court precedent. Baylor v. Estelle,

24    94 F.3d 1321, 1325 (9th Cir. 1996).  Although only Supreme Court law is binding on the states,

25    Ninth Circuit precedent remains relevant persuasive authority in determining whether a state court

26    decision is objectively unreasonable.  See Duhaime v. Ducharme, 200 F.3d 597, 600-01 (9th

27    Cir.1999).

28    AEDPA requires that we give considerable deference to state court decisions. The state

1  court's factual findings are presumed correct. 28 U.S.C. § 2254(e)(1). We are bound by a state's

2  interpretation of its own laws. <u>Souch v. Schaivo</u>, 289 F.3d 616, 621 (9th Cir.2002), *cert. denied*, 537

3  U.S. 859 (2002), *rehearing denied*, 537 U.S. 1149 (2003).

4  **III.  Review of Petitioner's Claim**

5      **A.  Ground One**

6      In his first ground for relief, Petitioner claims trial counsel provided ineffective assistance of

7  counsel in the following manner: (1) By failing to investigate the corrosion defense and the search

8  and seizure before the preliminary hearing; (2) By failing to file the suppression motion (Cal. Code

9  of Civ. Proc. § 1538.5) within sixty (60) days; (3) By failing to take photographs of the area where

10  the search and seizure took place; (4) By failing to subpoena witness Bridget Mosely at the

11  suppression hearing; (5) By failing to subpoena Mike Gary; (6) By failing to persuade witness John

12  Pheifer to testify; (7) By failing to put on a "corrosion defense"; (8) By failing to object to the

13  allegedly illegal first amended information; (9) By failing to object or move for a mistrial following

14  the prosecutor's allegedly improper closing argument; and (10) By failing to cooperate with appellate

15  counsel. Respondent contends the claims are without merit.

16      The law governing ineffective assistance of counsel claims is clearly established for the

17  purposes of the AEDPA deference standard set forth in 28 U.S.C. § 2254(d).  <u>Canales v. Roe</u>, 151

18  F.3d 1226, 1229 (9th Cir. 1998).  In a petition for writ of habeas corpus alleging ineffective assistance

19  of counsel, the court must consider two factors.  <u>Strickland v. Washington</u>, 466 U.S. 668, 687

20  (1984); <u>Lowry v. Lewis</u>, 21 F.3d 344, 346 (9th Cir. 1994).  First, the petitioner must show that

21  counsel's performance was deficient, requiring a showing that counsel made errors so serious that he

22  or she was not functioning as the "counsel" guaranteed by the Sixth Amendment. <u>Strickland</u>, 466

23  U.S. at 687.  The petitioner must show that counsel's representation fell below an objective standard

24  of reasonableness, and must identify counsel's alleged acts or omissions that were not the result of

25  reasonable professional judgment considering the circumstances. <u>Id</u>. at 688; <u>United States v.</u>

26  <u>Quintero-Barraza</u>, 78 F.3d 1344, 1348 (9th Cir. 1995).  Judicial scrutiny of counsel's performance is

27  highly deferential.  A court indulges a strong presumption that counsel's conduct falls within the

28  wide range of reasonable professional assistance.  <u>Strickland</u>, 466 U.S. at 687; <u>Sanders v. Ratelle</u>, 21

1   F.3d 1446, 1456 (9th Cir.1994).

2      Second, the petitioner must show that counsel's errors were so egregious as to deprive

3   defendant of a fair trial, one whose result is reliable.  Strickland, 466 U.S. at 688.  The court must

4   also evaluate whether the entire trial was fundamentally unfair or unreliable because of counsel's

5   ineffectiveness.  Id.; Quintero-Barraza, 78 F.3d at 1345; United States v. Palomba, 31 F.3d 1356,

6   1461 (9th Cir. 1994).  To set aside a conviction or sentence solely because the outcome would have

7   been different but for counsel's error, may grant the petitioner a windfall to which the law does not

8   entitle him.  Lockhart v. Fretwell, 506 U.S. 364, 369-70 (1993).   Thus, if the court finds that

9   counsel's performance fell below an objective standard of reasonableness, and that but for counsel's

10  unprofessional errors, the result of the proceeding would have been different, the court must then ask

11  whether despite the errors and prejudice the trial was fundamentally fair and reliable. Id.

12     A court need not determine whether counsel's performance was deficient before examining

13  the prejudice suffered by the petitioner as a result of the alleged deficiencies.  Strickland, 466 U.S. at

14  697.  Since it is necessary to prove prejudice, any deficiency that does not result in prejudice must

15  necessarily fail.  Ineffective assistance of counsel claims are analyzed under the "unreasonable

16  application" prong of Williams v. Taylor, 529 U.S. 362 (2000).  Weighall v. Middle, 215 F.3d 1058,

17  1062 (2000).

18     1. Failure to investigate the "corrosion" defense and the search and seizure

19     Petitioner first claims defense counsel was ineffective in failing "to investigate the corrosion

20  defense and the search and seizure before the [p]reliminary [e]xamination." Petition at 1. Petitioner

21  claims he informed defense counsel that the alleged victims were conspiring with officers of the

22  Fresno Police Department and that officers had taken Petitioner's vehicle off of private property

23  without a valid search warrant. Id. In support of his claim, Petitioner points to defense counsel's

24  questioning of Fresno Police Officer Xiong at the preliminary hearing. Petitioner argues the line of

25  questioning demonstrates "counsel ha[d] knowledge of corrosion between the victims and officers."

26  Id. Petitioner also points to the testimony of a victim in which the victim states that several officers

27  had questioned several women. (CT 10.) In addition, Petitioner claims counsel would have been able

28  to prove the vehicle impoundment was not pursuant to a valid search warrant had he done the

1   appropriate investigations and filed a discovery motion. Id.

2        Petitioner's allegations of collusion are pure speculation.  There is no credible evidence

3   demonstrating a conspiracy existed between prostitutes and police officers to convict Petitioner. The

4   testimony of the victim shows only that officers were investigating the instant offenses involving

5   prostitutes by questioning several prostitutes. There is nothing to indicate collusion.  Certainly, there

6   is nothing in Officer Xiong's testimony showing such. Petitioner's theories are pure conjecture, and

7   there is no reason to believe that further investigation by defense counsel prior to the preliminary

8   hearing would have revealed evidence of collusion or a conspiracy. Therefore, Petitioner has not

9   shown any error on the part of counsel. In addition, Petitioner cannot demonstrate prejudice.

10       Likewise, Petitioner's claim that counsel failed to prepare for the preliminary hearing on the

11  issue of search and seizure and thereby challenge the vehicle impoundment is without merit. As

12  Respondent correctly notes, the 5th DCA, after considering federal and state law, found the search

13  and seizure lawful. See p. 18, Exhibit C, Answer. Specifically, the 5th DCA "concluded that the

14  officers acted lawfully in seizing the truck . . . ." Id. As the search and seizure was deemed lawful,

15  additional research by defense counsel would not have aided Petitioner or had any effect on the

16  outcome of the preliminary hearing. Thus, Petitioner cannot show any prejudice resulting from

17  counsel's alleged errors.

18       2.  Timeliness of suppression motion

19       Petitioner also faults counsel for failing to file the suppression motion (Cal. Code of Civ.

20  Proc. § 1538.5) within sixty (60) days of arraignment in order to preserve Petitioner's right to seek

21  pretrial writ review.

22       As Respondent correctly notes, Petitioner fails to set forth in his petition the grounds counsel

23  would have raised in pretrial writ review.  In his traverse, Petitioner argues counsel should have

24  raised the trial court's misapplication of United States Supreme Court cases which resulted in a

25  denial of his suppression motion.

26       Petitioner cannot demonstrate prejudice because he cannot show that he would have

27  prevailed had it not been for counsel's alleged failure. The 5th DCA found the search and seizure

28  lawful. Therefore, any pretrial writ raising this issue would also have been denied.

1        3.  Failure to take photographs

2        Petitioner next claims counsel was ineffective in failing to obtain photographs of the area

3   involving the impound of the truck.  Petitioner argues that had counsel obtained photographs, he

4   could have demonstrated that the search and seizure was unlawful.

5        While it is true that photographs of the area may have offered further assistance to the trial

6   court in determining whether the vantage point of the officers viewing was lawful, the trial court had

7   sufficient evidence in the form of testimony from the investigating officer to make a proper

8   determination.  When Officer Skidmore was asked how he observed the vehicle, he stated: "You

9   could see it over the fence and through a fence." (RT 412-13.) The 5th DCA found the viewing

10  lawful: "[The investigating officers] were able to see the vehicle from a vantage point open to the

11  public, the driveway – a point at which they were legally entitled to be." See p. 15, Exhibit C,

12  Answer. Therefore, no prejudice resulted from counsel's alleged failure since photographs would

13  have been cumulative and would not have altered the outcome.

14       4.  Failure to subpoena Bridget Mosely at suppression hearing

15       Petitioner claims counsel also failed to subpoena witness Bridget Mosely to the hearing on

16  the suppression motion. Petitioner alleges Mosely was the only witness to the police officers' initial

17  entry onto the property. Petitioner contends Mosely's testimony would have altered the outcome of

18  the hearing.

19       The record demonstrates that Mosely was not the only one who witnessed the search and

20  seizure.  Petitioner's neighbor, Rory Ekern, lived "directly next door" to Petitioner. (RT 430.) The

21  defense called Mr. Ekern, and he testified at the hearing to having witnessed the search and seizure.

22  (RT 429.)  Ekern stated that he owned the property located at 4566 E. Dakota on which Petitioner

23  maintained his residence. (RT 430.) Petitioner rented the property from Mosely who also lived at

24  4566 E. Dakota and rented from Ekern. (RT 430.) Ekern testified that he had seen officers outside

25  Petitioner's residence on several occasions. (RT 431.) Ekern stated that on the day of the search and

26  seizure, he received a phone call from Mosely that the officers were at the property and they intended

27  to remove Petitioner's truck. (RT 433.) When Ekern arrived, the officers were conducting a search of

28  the vehicle. (RT 435.) Ekern testified that Mosely was in the house and didn't want to come outside.

1   (RT 437.)

2        Therefore, Petitioner has not demonstrated counsel's failure to call Mosely to be error.

3   Ekern's testimony was clearly preferable and more relevant since he was the one who witnessed the

4   search of the vehicle and its removal from his property. In addition, Petitioner cannot demonstrate

5   prejudice.  Mosely could not have offered anything that would have altered the outcome of the

6   hearing since she was inside her house during the search.

7        5.  Failure to subpoena Mike Gary

8        Petitioner claims defense counsel failed to subpoena Mike Gary, who at one time shared a

9   holding cell with Petitioner. Petitioner states that Mike Gary had informed him that he had been "set

10  up" by Officer Skidmore. Petition at 9.  Mike Gary also allegedly told Petitioner he had other details

11  regarding Petitioner's case. Id. Petitioner contends Mike Gary would have testified that all of the

12  victims knew each other. Id.

13       Nevertheless, Petitioner states and the exhibits show that defense counsel chose not to call

14  Gary because he believed Gary would make an unfavorable impression on the jury and that his

15  testimony would do more harm than good. Petition at 9; Exhibit L. According to the exhibits

16  submitted by Petitioner, Gary was the pimp of two individuals: Melody Bowlan and Joni Price. See

17  Exhibit K. In his traverse, Petitioner contends that defense counsel could have prevented Gary from

18  appearing unfavorable by limiting his questions to certain topics.  However, this would not have

19  prevented the prosecutor from delving into Gary's credibility and bias on cross-examination. The

20  prosecutor easily could have undermined Gary's credibility by inquiring into the manner in which

21  Gary and Petitioner met (they were both in jail) or the source of Gary's information (Gary was a

22  pimp). By calling Gary, defense counsel risked not only that the jury would disregard his testimony

23  because of his poor credibility, but that Petitioner's own credibility would be diminished as a result

24  of his association with an avowed criminal.  Counsel's decision not to call Gary was a reasonable

25  decision, and Petitioner has not demonstrated ineffectiveness.  See Denham v. Deeds, 954 F.2d

26  1501, 1505 (9th Cir.1992) (holding that counsel's decision not to call alibi witnesses because of

27  inconsistencies in the proposed testimony "reflect[ed] the skill and judgment one would expect of a

28  reasonably competent attorney").

1    6.  Failure to persuade Witness John Pheifer to testify

2        Next, Petitioner claims counsel was ineffective in failing to persuade John Pheifer to testify.

3   Counsel had intended to call Pheifer and did secure his appearance at trial. (RT 672, 775, 828.)

4   Petitioner states Pheifer had information regarding prostitutes receiving money from Officer

5   Skidmore in exchange for information. (RT 775.)

6        From the record, it is apparent that counsel did secure Pheifer's presence at trial. (RT 828.)

7   However, Pheifer refused to testify. When the Court took up the issue, defense counsel stated: "He's

8   not going to testify. Apparently, he's in the back refusing to testify . . . ." (RT 828.) A bailiff

9   confirmed that Pheifer was refusing to testify. (RT 828.) And so, defense counsel told the bailiff to

10  "send him back." (RT 828.) Because Pheifer refused to testify, counsel's decision not to force him to

11  the stand was not unreasonable. Denham, 954 F.2d at 1505; United States v. Opplinger, 150 F.3d

12  1061, 1072 (9th Cir.1998).

13   7.  Failure to present "corrosion defense"

14      Petitioner claims counsel was ineffective in failing to present a "corrosion defense."

15  Petitioner contends counsel persisted in putting on an alibi defense despite weak evidence supporting

16  such a defense.

17      The Court is unclear as to what Petitioner means by a "corrosion defense." Petitioner does

18  not clarify or expound on the claim anywhere in his petition.  Petitioner does imply that there was

19  collusion among the police officers and the prostitutes. Nevertheless, if this is what Petitioner means,

20  there is simply no evidence supporting collusion or a conspiracy among the police and prostitutes.

21  The record only shows that police officers interviewed several prostitutes, and for the most part,

22  prostitutes were the victims of the offenses charged against Petitioner, but there is no evidence of a

23  secret agreement between the prostitutes and the police to falsely convict Petitioner.

24      Therefore, Petitioner has not demonstrated that counsel's failure to put on a "corrosion

25  defense" constituted ineffective assistance of counsel. In addition, Petitioner cannot show prejudice,

26  because there is nothing in the record which would have supported such a defense.

27   8.  Failure to object to the allegedly illegal first amended information

28      Petitioner next contends defense counsel failed to object to the 21-count information.

1  Petitioner claims the amended information was illegal because it contained a charge which the court

2  had previously discharged for lack of sufficient credible evidence. Petition at 16. Petitioner also

3  complains defense counsel failed to challenge the amended information as it contained charges of

4  making criminal threats, and where these charges were not included in the original information.  Id.

5  Further, Petitioner claims trial counsel failed to object and move for a new jury panel or a mistrial

6  when the prosecutor dismissed two of the thirteen charges read to the jury panel. Petition at 17.

7        In the first information, Count 19, the district attorney charged Petitioner with committing the

8  robbery of an individual, Twila, with the use of a knife. (CT 127.) At the preliminary hearing,

9  evidence was introduced that Petitioner had forcefully taken forty dollars from Twila. (CT 82.)

10  According to Officer Mart's testimony, Twila had told him that the suspect struck her several times

11  on the right side of her head which his fist, brandished a knife, and took forty dollars from her. (CT

12  82.) However, in a prior statement to police, Twila did not report that the suspect took forty dollars

13  from her, only that the suspect had struck her on the right side of the head. (CT 86-87.) Following

14  the introduction of the evidence, defense counsel argued that the robbery charge as to Twila should

15  be dismissed because the evidence was insufficient and inconsistent. (CT 112-113.) The trial court

16  then discharged Count 19, stating: "The court finds insufficient credible evidence to support a

17  holding order on the robbery offense set forth in Count 19 and orders the defendant discharged on

18  that violation." (CT 115.)  Nevertheless, in the first amended information defense counsel re-charged

19  Petitioner in Count 8 with robbery of Twila with the use of a knife. (CT 214-215.)

20        Cal. Penal Code § 739 provides, in relevant part:

21    [I]t shall be the duty of the district attorney of the county in which the offense is triable to file
      in the superior court of that county within 15 days after the commitment, an information
22    against the defendant which may charge the defendant with either the offense or offenses
      named in the order of commitment *or any offense or offenses shown by the evidence taken*
23    *before the magistrate to have been committed.*

24  (Emphasis added.)

25        Under California law, "a magistrate's legal conclusion that 'the evidence failed to show

26  probable cause that the offense had been committed' can be challenged by the district attorney by

27  means of including additional charges in the information so long as that challenge is made 'within

28  the context of the magistrate's findings on the evidence.'" People v. Farley, 19 Cal.App.3d 215, 221

1    (1971), *quoting* <u>Jones v. Superior Court</u>, 4 Cal.3d 660, 665-666 (1971), *superceded by constitutional*

2    *amendment on other grounds*, <u>Montez v. Superior Court</u>, 285 Cal.Rptr. 279 (Cal.App.2d.1991).  A

3    district attorney may not recharge an offense where the magistrate has made factual findings which

4    are fatal to the asserted conclusion that a particular offense was committed.  <u>Farley</u>, 19 Cal.App.3d at

5    221. "A clear example of this would be where the magistrate expresses disbelief of a witness whose

6    testimony is essential to the establishment of some element of the corpus delicti." <u>Id</u>. "Where,

7    however, the magistrate either expressly or impliedly accepts the evidence and simply reaches an

8    ultimate legal conclusion therefrom - i.e., whether or not such evidence adds up to reasonable cause

9    that the offense had been committed - such conclusion is open to challenge by inclusion in the

10   information." <u>Id</u>.

11          In this case, the magistrate did not make factual findings. Rather, he concluded generally that

12   the evidence was insufficient "to support a holding order on the robbery offense." (CT 114.) In

13   <u>Farley</u>, the magistrate concluded generally that the evidence was insufficient to support the charge.

14   19 Cal.App.3d at 221.  However, the California Supreme Court found the district attorney could

15   charge the defendant despite the magistrate's ruling because the magistrate had made a legal

16   conclusion, not a specific factual finding contrary to an element of the offense. <u>Id</u>. Likewise, in this

17   case it was not improper for the district attorney to charge Petitioner with robbery of Twila despite

18   the magistrate's legal conclusion that there was insufficient evidence to support the charge, because

19   evidence was introduced which could test the magistrate's conclusion at trial. The magistrate did not

20   make a specific factual determination as Petitioner argues, only a legal conclusion based on the

21   evidence. <u>Farley</u>, 19 Cal.App.3d at 221; <u>Jones</u>, 4 Cal.3d at 665-666. Accordingly, it was not error for

22   defense counsel to fail to challenge the first amended information, because the district attorney's

23   reinstatement of the charge was not improper. In addition, Petitioner cannot show prejudice resulting

24   from counsel's alleged failure because the first amended information was not in violation of

25   California law.

26          Petitioner also claims defense counsel failed to challenge the additional charges in the

27   amended information because they were not included in the original complaint.  As discussed above,

28   the district attorney may charge the defendant with "any offense or offenses shown by the evidence

1    taken before the magistrate to have been committed," provided the magistrate has not made a factual

2    finding fatal to the asserted conclusion that a particular offense was committed. Cal. Penal Code

3    § 739; Farley, 19 Cal.App.3d at 221. Further, under California law the rule is that an information

4    which charges the commission of an offense not named in the commitment order will not be upheld

5    unless (1) the evidence before the magistrate shows that such offense was committed, and (2) that

6    the offense 'arose out of the transaction which was the basis for the commitment' on a related

7    offense. Jones, 4 Cal.3d at 664-665; Parks v. Superior Court, 38 Cal.2d 609, 614 (1952); People v.

8    Chimel, 68 Cal.2d 436, 443 (1968) , revd. on other grounds, 395 U.S. 752; People v. Downer, 57

9    Cal.2d 800, 809-810 (1962); People v. Evans, 39 Cal.2d 242, 249 (1952).

10       In Count 6 of the First Amended Information, Petitioner was charged with threatening to

11   commit a crime which would result in death or great bodily injury to victim Dana. (CT 214.) At the

12   preliminary hearing, Dana testified that Petitioner held a knife and pepper spray to her while

13   demanding money, saying, "[B]itch, gimme your money." (CT 8-9.) In Count 9, Petitioner was

14   charged with making a criminal threat to victim Twila. (CT 215.) However, the 5th DCA reversed

15   Petitioner's conviction on this count. See p. 31, Exhibit C, Answer. In Count 11, Petitioner was

16   charged with threatening to commit a crime which would result in death or great bodily injury to

17   victim Joni. (CT 216.) At the preliminary hearing, evidence was introduced that Petitioner, while

18   holding a knife, told Joni that "she was going to give him a blow job or . . . he was going to cut her

19   throat." (CT 47.) Petitioner then held the knife to Joni's neck and told her that she "better . . . give

20   him some good head or he would fuck her in the ass and stab her." (CT 48.)

21       There was evidence which showed Petitioner committed Counts 6 and 11, and the magistrate

22   did not make a factual determination to the contrary.  In addition, the charges arose from the same

23   transactions for which Petitioner was ordered held.  Therefore, the district attorney did not err in

24   including the charges in the First Amended Information.  Consequently, defense counsel did not err

25   in failing to object to the inclusion of Counts 6 and 11, and Petitioner cannot demonstrate prejudice

26   resulting therefrom.

27       Petitioner also claims trial counsel failed to object and move for a new jury panel or a

28   mistrial when the prosecutor dismissed two of the thirteen charges read to the jury panel and when

1   the court granted defense counsel's motion to dismiss Counts 5, 6 and 7. Petitioner contends that the

2   removal of the five charges from the jury's consideration so inflamed the jury that no jury instruction

3   could remove the thought that Petitioner had eluded punishment on five charges. Petition at 18.

4        Of the fifteen counts alleged in the First Amended Petition, the prosecutor orally requested

5   the court strike two counts. (RT 506.) The court struck the two counts, stating:

6          Counsel, as I mentioned to you a few moments ago before we took our recess, I do
           intend to advise the jurors that they will have the Information read to them, and since I have
7          previously paraphrased the Information that included two counts that are no longer before the
           jury, I intend to instruct them at this time under CALJIC 17.46 as I will modify it, telling
8          them that the charges that I had paraphrased that were originally listed as Counts 10 and 11,
           the forced oral copulation and terrorist threats to an alleged victim named Joni, that those
9          counts are no longer before the jury and that they should not consider this fact for any
           purpose.
10
    (RT 506, 528-529.)
11
         The court then instructed the jury that "there have been some modifications" and the "[i]ssue
12
    of guilt of the defendant as paraphrased to you as Count 10 and 11 of the defendant, a forced
13
    copulation charge and alleged terrorist charge to a victim named Joni, those, counts are no longer
14
    before you. Do not consider this fact for any purpose. It is not relevant to whether the defendant is
15
    guilty or not guilty of any remaining count." (RT 529-530.)
16
         Defense counsel orally requested that Counts 5, 6, and 7 be dismissed for insufficient
17
    evidence. (RT 833). The court granted the request and dismissed the counts. (RT 833-834.)
18
         Petitioner's claim is completely speculative. There is no evidence from which to conclude
19
    the jury became incensed over the dismissal of these charges. In addition, jurors are presumed to
20
    follow their instructions. Richardson v. Marsh, 481 U.S. 200, 211 (1987). Petitioner submits nothing
21
    which would overcome this presumption. On these facts, Petitioner has failed to show any prejudice
22
    resulting from counsel's failure to bring a motion for a new jury panel or a mistrial.
23
         9.  Mistrial based on prosecutor's closing argument
24
         Petitioner claims defense counsel was ineffective in failing to object or move for a mistrial
25
    following the prosecutor's allegedly improper closing argument. Petitioner claims the prosecutor
26
    improperly commented that Petitioner had tailored his testimony. Petitioner contends defense
27
    counsel's failure to object waived his right to raise the issue on direct appeal.
28

1    The record shows the prosecutor argued that Petitioner tailored his testimony to match the

2    testimony of the victims. (RT 1170-1173, 1181, 1184, 1191.) In addition, the prosecutor argued that

3    Petitioner had the opportunity to tailor his testimony by listening to the witnesses testify and reading

4    the various police reports. (RT 1176.)

5    Petitioner's claim is without merit.  He cites to one federal case in support of his contention

6    that the prosecutor's arguments were unconstitutional: Agard v. Portuondo, 117 F.3d 696 (2d.

7    Cir.1997), rev'd, Portuondo v. Agard, 529 U.S. 61 (2000). As noted, however, the Supreme Court

8    reversed the Second Circuit, specifically holding that a prosecutor's comments during summation,

9    calling the jury's attention to fact that the petitioner had the opportunity to hear other witnesses

10   testify and to tailor his testimony, did not unlawfully burden his right to be present at trial, to be

11   confronted with witnesses, or to testify on his own behalf, and did not violate his right to due

12   process. Portuondo, 529 U.S. at 1120.

13   Because the prosecutor's comments were not improper, defense counsel's failure to object

14   was not error and Petitioner cannot demonstrate prejudice.

15   <u>10.  Failure to cooperate with appellate counsel</u>

16   Last, Petitioner claims defense counsel was ineffective in failing to cooperate with appellate

17   counsel. Specifically, he alleges defense counsel failed to timely turn over Petitioner's file to

18   appellate counsel.

19   Petitioner submits no federal authority demonstrating counsel's actions to constitute

20   ineffective assistance. In addition, he has failed to show prejudice. Appellate counsel timely filed an

21   opening brief on appeal, and the 5th DCA subsequently reversed Petitioner's conviction on Count 9

22   and the true finding on Cal. Penal Code § 12022.3(a). See Exhibit C, Answer.  Petitioner fails to

23   show how, but for counsel's unprofessional errors, the result of the proceeding would have been

24   different. Strickland, 466 U.S. at 687-688.

25   <u>11.  Conclusion</u>

26   In sum, Petitioner has not shown constitutional error as a result of any of defense counsel's

27   alleged failures. Even if constitutional error can be shown, Petitioner has not shown the state court

28   rejection of the claim to be an unreasonable application of clearly established Federal law, as

1   determined by the Supreme Court of the United States, or a decision based on an unreasonable

2   determination of the facts in light of the evidence presented. <u>See</u> 28 U.S.C. § 2254(d). The claim

3   must be denied.

4        **B.  Ground Two**

5        In his second ground for relief, Petitioner contends the prosecutor committed misconduct by

6   filing an amended information charging new and different offenses and recharging Petitioner with an

7   offense which was discharged at the preliminary examination. Petitioner further argues the

8   prosecutor committed misconduct by arguing in his closing that Petitioner had tailored his testimony.

9        A habeas petition will be granted for prosecutorial misconduct only when the misconduct "so

10  infected the trial with unfairness as to make the resulting conviction a denial of due process."

11  <u>Darden v. Wainwright</u>, 477 U.S. 168, 171 (1986), *quoting* <u>Donnelly v. DeChristoforo</u>, 416 U.S. 637,

12  643 (1974); <u>Bonin v. Calderon</u>, 59 F.3d 815, 843 (9th Cir. 1995).  To constitute a due process

13  violation, the prosecutorial misconduct must be "of sufficient significance to result in the denial of

14  the defendant's right to a fair trial." <u>Greer v. Miller</u>, 485 U.S. 756, 765 (1987), *quoting* <u>United</u>

15  <u>States v. Bagley</u>, 473 U.S. 667 (1985). Under this standard, a petitioner must show that there is a

16  reasonable probability that the error complained of affected the outcome of the trial - i.e., that absent

17  the alleged impropriety, the verdict probably would have been different.

18       As previously discussed, it was not improper in this case for the district attorney to charge

19  Petitioner with robbery of Twila (Count 8) despite the magistrate's legal conclusion that there was

20  insufficient evidence to support the charge, because evidence was introduced which could test the

21  magistrate's conclusion at trial. Under California law, "a magistrate's legal conclusion that 'the

22  evidence failed to show probable cause that the offense had been committed' can be challenged by

23  the district attorney by means of including additional charges in the information so long as that

24  challenge is made 'within the context of the magistrate's findings on the evidence.'" <u>People v.</u>

25  <u>Farley</u>, 19 Cal.App.3d 215, 221 (1971), *quoting* <u>Jones v. Superior Court</u>, 4 Cal.3d 660, 665-666

26  (1971), *superceded by constitutional amendment on other grounds*, <u>Montez v. Superior Court</u>, 285

27  Cal.Rptr. 279 (Cal.App.2d.1991). The magistrate did not make a specific factual determination as

28  Petitioner argues, only a legal conclusion based on the evidence. <u>Farley</u>, 19 Cal.App.3d at 221;

1    Jones, 4 Cal.3d at 665-666.

2        With respect to the additional charges included in the amended information that were not

3    included in the original complaint, the prosecutor committed no misconduct. There was evidence

4    which showed Petitioner committed Counts 6 and 11, and the magistrate did not make a factual

5    determination to the contrary.  In addition, the charges arose from the same transactions for which

6    Petitioner was ordered held.  Therefore, the district attorney properly included the charges in the

7    First Amended Information.

8        Petitioner's claim that the prosecutor committed misconduct by arguing Petitioner tailored

9    his testimony during closing argument is also without merit. As previously discussed, the Supreme

10   Court held in Portuondo that a prosecutor's comments during summation, calling the jury's attention

11   to the fact that the petitioner had the opportunity to hear other witnesses testify and to tailor his

12   testimony, did not unlawfully burden his right to be present at trial, to be confronted with witnesses,

13   or to testify on his own behalf, and did not violate his right to due process. Portuondo, 529 U.S. at

14   1120.

15       Accordingly, Petitioner has failed to demonstrate prosecutorial misconduct which "so

16   infected the trial with unfairness as to make the resulting conviction a denial of due process."

17   Darden v. Wainwright, 477 U.S. 168, 171 (1986), quoting Donnelly v. DeChristoforo, 416 U.S. 637,

18   643 (1974). The state court rejection of the claim was not contrary to, or an unreasonable application

19   of, clearly established Federal law, as determined by the Supreme Court of the United States, nor did

20   the state court resolution result in a decision that was based on an unreasonable determination of the

21   facts in light of the evidence presented. See 28 U.S.C. § 2254(d). The claim must be denied.

22   **C.  Ground Three**

23       In his last ground for relief, Petitioner contends his appellate counsel was ineffective in

24   failing to raise certain issues on appeal. In his traverse, Petitioner complains appellate counsel should

25   have raised "two Dead-Bang winning issues on appeal," including: 1) the issue of the First Amended

26   Information; and 2) the issue of the prosecutor's allegedly improper closing argument. Traverse at

27   21.

28       Effective assistance of appellate counsel is guaranteed by the Due Process Clause of the

U.S. District Court
E. D. California        cd                                21

1   Fourteenth Amendment. <u>Evitts v. Lucey</u>, 469 U.S. 387, 391-405 (1985).  Claims of ineffective

2   assistance of appellate counsel are reviewed according to <u>Strickland 's</u> two-pronged test.  <u>See</u>, e.g.

3   <u>Miller v. Keeney</u>, 882 F.2d 1428, 1433 (9th Cir.1989);  <u>United States v. Birtle</u>, 792 F.2d 846,

4   847 (9th Cir.1986).  A defendant must therefore show that counsel's advice fell below an objective

5   standard of reasonableness and that there is a reasonable probability that, but for counsel's

6   unprofessional errors, defendant would have prevailed on appeal.  <u>Miller</u>, 882 F.2d at 1434 & n. 9

7   (citing <u>Strickland</u>, 466 U.S. at 688, 694; Birtle, 792 F.2d at 849).  However, appellate counsel does

8   not have a constitutional duty to raise every nonfrivolous issue requested by defendant.  <u>Jones v.</u>

9   <u>Barnes</u>, 463 U.S. 745, 751-54 (1983);  <u>Miller</u>, 882 F.2d at 1434 n. 10.  The weeding out of weaker

10  issues is widely recognized as one of the hallmarks of effective appellate advocacy.  <u>Id</u>. at 1434

11  (footnote and citations omitted).  As a result, appellate counsel will frequently remain above an

12  objective standard of competence and have caused her client no prejudice for the same

13  reason--because she declined to raise a weak issue.  <u>Id</u>.

14       Here, Petitioner complains appellate counsel failed to raise claims regarding the additional

15  charges in the amended information as well as the charge was dismissed by the magistrate from the

16  original complaint. As previously discussed, these claims are without merit. The district attorney did

17  not err in charging Petitioner in the First Amended Information, and defense counsel did not err in

18  failing to challenge the First Amended Information. Accordingly, appellate counsel did not err in

19  raising these same issues on appeal, and Petitioner cannot demonstrate prejudice.

20       Likewise, appellate counsel did not err in failing to challenge the prosecutor's closing

21  argument. The prosecutor's argument that Petitioner had tailored his testimony was not improper

22  under Supreme Court case law. In addition, Petitioner has not demonstrated prejudice.

23       The state court rejection of the claim was not contrary to, or an unreasonable application of,

24  clearly established Federal law, as determined by the Supreme Court of the United States, nor did the

25  state court resolution result in a decision that was based on an unreasonable determination of the

26  facts in light of the evidence presented. <u>See</u> 28 U.S.C. § 2254(d). The claim must be denied.

27  ///

28  ///

1

**ORDER**

2        Accordingly, the petition for writ of habeas corpus is hereby DENIED.  The Clerk of Court is

3  DIRECTED to enter judgment for Respondent. All pending motions are DISMISSED as moot.

4  IT IS SO ORDERED.

5  **Dated:**   **April 21, 2005**                 **/s/ Lawrence J. O'Neill**

    b9ed48                             UNITED STATES MAGISTRATE JUDGE

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28